will give. Oh, very good. We're going to go ahead with case number four. Thank you. We're going to begin with oral argument from Ms. White. Thank you, Ms. White, for your flexibility. Good morning. Good morning. May it please the court. My name is Cece White. I'm here on behalf of the appellant, Roberto Prieto. We're here because Mr. Prieto was convicted of three counts of felon in possession of a firearm, and we're here specifically on two sentencing enhancement issues, the trafficking enhancement, as well as the enhancement for the number of firearms. I'll begin with trafficking. The rule in the guidelines for trafficking is that the defendant transferred two or more firearms to another individual and knew or had reason to believe that that conduct would result in the transfer to an individual whose possession would be unlawful or who intended to use the weapons unlawfully. It was applied in this case because of unlawful possession of the recipient of the weapons. The guidelines really narrowly define what qualifies as unlawful possession. The person must have the prior conviction for a crime of violence, a controlled substance offense, or a misdemeanor domestic violence offense, or they must be under a criminal justice sentence at the time of the offense. Here it was a criminal justice sentence specifically parole. I want to focus on the knowledge or belief component of this requirement. First, they must have transferred these two or more firearms, but the knowledge or belief as to the recipient's status as an unlawful possessor must also apply to the transfer of at least two weapons. Ms. White, is your argument grounded in the temporal delay, the 13 months? That's correct, Your Honor. So we have June 2022, we have one transfer of a firearm, and then it's over a year later when we have a second transfer of a firearm. How short is too short? How long is too long? I would say that 13 months is too long. With something like parole, I think we would need proof in the second transfer, at least the transfer of two weapons, to show that there was a reason for the defendant to know or have reason to believe that that was still in effect. So here, it's June 2022 when the CS, the confidential source, tells the defendant that he's on parole. Over a year later, he has no reason to know that that status persists. How would you articulate, take Judge Bratton's question just a little bit broader. How would you articulate that dividing line? Because our case law, if you look at Wallace and Santoro, cases like that, you know, six to nine months has been enough. How would you put into words what that dividing line is? I think that the dividing line depends on which of the two statuses are being used for the enhancements application. So if it's intent to use the firearms unlawfully, then I can see a much larger period of time. Because that, you know, if that intent is expressed and then one year later those guns are sold to the same person who expressed an intent that they're going to use the weapons they receive unlawfully, I can see how that would still be in effect. But because the guideline really specifically says that it must be at the time of the offense that they were under that criminal justice sentence, I think that changes the line and makes it a much shorter period of time. Is the temporal analysis any different on the other enhancement at issue in the case? The number of weapons? Yeah. No, I don't think that the time gap changes anything because they are, they are all related. We, you know, what we really dispute in the number of the weapons has more, less to do with the time gap between the transfers and more to do with the three weapons that were not ever transferred. So I don't think in the number of weapons the gap has an effect. Yeah, you've never argued that anyway. No. But the... How do you respond to the argument that the language of the statute says that he had reason to believe that such conduct would result in the transport, transfer, or disposal of a firearm to an individual? So that all that it matters is that he knew he was on parole or had reason to believe he was on parole in connection with one sale. I do acknowledge that the First Circuit has now held as such and the Second Circuit did mention it in dicta of a case very recently, but other than that I've actually not found a case where it's been applied in that manner and it wasn't... Or rejected. I don't think there are any cases rejecting that, but what is your argument as you stand here today as to why based on the plain language of this I think the language such conduct is what dictates that result. So, you know, the first prong being the transfer. The second then says that knowledge or belief is that such conduct and the conduct has been defined as the transfer of two or more weapons. So while it does say a firearm in that clause as well, I think such conduct refers back to that first clause, which is quite specifically the transfer of two or more weapons. I also think the fact that it says at the time of the offense in the definition of unlawful possessor supports our argument as well because the time of the offense, the time of the transfer of two weapons is relevant here. In the June 2020 transfer, he has that knowledge or belief, but he no longer does 13 months later. I think this is relatively specific to the unlawful possession prong of this because that is where it says at the time of the number of weapons. We're really at issue with those three, correct? The 6th, 7th, and 8th one is what you're disputing, correct? The firearms? Yes. So there are five firearms that he pled guilty to possessing. Those are not in dispute. The three that in dispute were offered in a text message for sale. It was clear from the evidence that he didn't have actual possession at the time of the messages. He's referencing someone else who has the weapons and the fact that they may be sold by that other person. So they're not in his control or in his possession. The district court did appear to agree that there was no possession. So then the other issue has become whether there was proof that they were unlawfully sought to be obtained. And the guideline is really specific that there are only three categories that can be counted under this enhancement and that's unlawfully possessed, unlawfully sought to be obtained, or unlawfully distributed. So here the evidence at all of what efforts he made to obtain these weapons. There was no text message or information on who he was getting them from. We know nothing about the actual efforts to obtain them. All we have is a text message saying that he will sell them. This argument seems a little bit different than what was argued before the district court. It is not different than what was argued before the district court, Your Honor. The focus below seemed to be on unlawful possession rather than sought to obtain. In the sentencing memo the focus was on unlawful possession, but in the oral arguments, because the defense did file their memo, our memo first, so then when the government raised their argument that it was unlawfully sought to obtain, the oral argument did focus on both. I would direct the court to page 14 of our appendix to see that portion of that. Offering them for sale does not prove that he took steps to obtain them or that those steps were themselves unlawful, which is what the guideline requires. Why can't you infer that he took a step to obtain them, given that the June 2020 sale had already occurred? The June 2020 sale had no mention of other weapons that would later be sold. No, fair enough, but when a person that you bought a gun from or that the defendant sold to and then he's re-offering less than a month later, well he's obviously in a possession or in position to get a gun because he just sold one. I think the issue is that the guideline doesn't say attempting to possess or the intent to possess. It does say that he has to unlawfully seek to obtain it, and we have no proof of what he did to seek to obtain it. So he may have told someone he planned... Even though he was marketing a second gun after a first sale. That is all they have, yes. That is the evidence before us, but in cases that have interpreted what qualifies as sought to obtain, there's been significantly more evidence. Maturino, which we mentioned in our brief, there was significant evidence showing... But here it's just, was the district court's determination clearly erroneous? And you have the texts that include the photos, they discuss and plan to meet, you have prices offered. Why would that be clearly erroneous to conclude? To conclude that those weapons were involved in the offense? Yes. Because we know nothing about how they were sought to obtain, and it must be unlawful. The seeking out of the weapons itself must be unlawful. But as Judge Scudder pointed out, you already had that first sale. Right, but the sales were not, like in Burke for instance, the sales were premised on one another. It was a shotgun in exchange for two future handguns. In this case, there's no connection between the sales, and other than the first and second, they're separated by 13 months. And the second sale never took place. We know from the evidence that it's because the weapon was in someone else's possession, and that person sold the weapon themselves. So there is no possession, and we have no information at all about the efforts that were taken to obtain the weapons, including who they were from or what their source was. So they just failed to prove that it was unlawfully sought to obtain. Do I have to reserve the remainder of your time? Yes, thank you. We'll be giving you some more rebuttal time, Ms. White. We'll next move to Ms. DeMarco for argument on behalf of the government. Thank you, Your Honor. May it please the Court, Megan DeMarco for the United States. I'll begin with the trafficking enhancement. The defendant in this case transferred five firearms to a confidential source. For at least one of those firearms, the source explicitly told the defendant, I am on parole, essentially. Under the plain language of Application Note 13, that is sufficient to apply the enhancement in this case. The plain language states that two or more firearms must be transferred, which no one's disputing here, that five were, and that conduct must result in the transfer of one firearm to someone whose possession would be unlawful, including someone who's on parole. So the government's position is the plain language of the guidelines supports the enhancement in this case. If it has to be during both of the transfers, the district court didn't say a lot about why he would have known the confidential source was on parole or why he had reason to believe during the second sale. What's your strongest argument for that? Your Honor, I think our strongest argument is that the confluence of And the district court did say his belief was sufficient. I agree that it was not a lengthy explanation, but the district court did say he had reviewed the PSR, the government's sentencing memo, and focused in on the defendant's belief being sufficient. What are those factors? Yes, Your Honor. The factors are that a year earlier, the confidential source had explicitly, I'm on parole. He mentioned that he had warrants. The defendant himself had served more than one term of parole that lasted longer than a year. He had served one term of parole that was actually 39 months, more than three years. And finally, the circumstances hadn't changed between the first set of transfers and the second. Transfer one and transfers two, three, four, and five. The confidential source and the defendant picked up exactly where they had left off a year earlier. So in the defendant's mind, there would be no reason to think that any circumstances had changed, including the status of the CS, taken together with the CS's explicit statement that he was on parole, that he had warrants, that he had a criminal history. So the government's position on the trafficking enhancement would be that the plain language supports the enhancement of only one firearm transferred with that knowledge, but even if, as defendant suggests, that knowledge needs to, or reason to believe, needs to carry over for all of them, that combination of factors would support the enhancement. If there are no other questions on the trafficking, I'll move on to the other enhancement. The defendant transferred five firearms. I think that's not in dispute. The other three, for each of them, they followed the same pattern, the same modus operandi, and they hit the factors that this court has said are relevant for considering relevant conduct. They're temporally similar, that they occur with regularity, and they occurred following the same pattern. So for the sixth gun, that's the one that was less than a month after the first transfer, the defendant did the same thing that he had done when he had sold the first gun. He texted the CS, he mentioned the price, he sent a photo, he offered specific details. The CS then has a conversation with the defendant over the phone and tells the agents, we're going to meet up the next day, the sale is going to be finalized. Due to circumstances beyond anyone's control, that sale was never executed, the defendant's arrested. But the government's position is that, based on the similarity of the conduct to the first sale, the temporal closeness of it, its relevant conduct, the defendant clearly took steps, sought to obtain that gun. What do you think the line is on the temporal proximity? Well, how much time is too much time to go by? Well, Your Honor, I think, and the reason I'm asking that is, I think it's a difficult question. You may be okay here, but I think it's a difficult question on the intersection of 1B3, the relevant conduct rule, or whatever that is. The application of the relevant conduct rule vis-a-vis 922G, because 922G is a status offense. The offense is committed and completed the moment a prior felon is in possession of a firearm. And then if that clock keeps running, relevant conduct-wise, to add in, you know, the additional guns for purposes of the enhancement, what I wonder about is when too much time has gone by. What do you think on that? Yes, Your Honor. I think, well, it's two things. I think in this case, the temporal proximity is pretty close. The first one is only three weeks later, and in the second set of following that. I would also point out that this court has said that this is, there are three factors that matter, and not all three have to have the same strength. If one of them is missing, the other two can make up for the lack of that. So, for example, because these are regular and occurring in the same pattern, that factor might be a little stronger than the temporal factor. And so I think the government's position would be that even if there's some question about the So let that case come to us where the question's harder, and we'll figure it out then. Well, I think in this case... I mean, it's a hard question. I don't know. I don't have any answer. That's why I'm, I don't know. You know, I think you're absolutely right that the time is close here. And that's a fair argument. I just wonder how we articulate where that outer edge of that is. I understand, Your Honor. I think in this case, you don't need to reach that question because it is fairly temporally close. And in terms of the facts of the seventh and eighth firearm that are disputed, the defendant, again, texted a photo to the CS. He actually used the words, I got, in reference to the firearms, which is the same language that he used in reference to firearms that he had actually sold the CS. So the government's position would be that that language manifests either actual or constructive possession. We actually don't know whether the defendant had the guns and sold them to someone else or his supplier just never delivered them to him. But in all eight of these transactions, he mentions a supplier. And so the government's position is that the unlawful... I mean, inherent in all those text messages, if we circle back to where we were, is that he's in a position to acquire firearms to then in turn sell to people. That's exactly right, Your Honor. And that's exactly how he approached the firearms that he did sell, was to tell the CS, here's a photo, here's a price, my supplier will drop it off. So implicit in that is he must have done something to obtain them. Exactly right, Your Honor. So the government's position is that based on the regularity of the sales, the defendant certainly sought to obtain them. If there are no other questions for me, the government would ask you to affirm the sentence of the district court. Thank you very much, Ms. DeMarco. Ms. White, we'll go back to you. We'll give you two minutes for a moment. Briefly, Your Honors, I want to just address what was just being discussed, the fact that he was in a position to obtain weapons. We do know that he obtained and then transferred five weapons, but the issue is it's pure conjecture that the other weapons were ever obtained. And it is required that it be not only that he sought to obtain the weapons, but that his efforts to do so are unlawful. And here we don't have any information on what efforts he did take to seek to obtain those. It would be conjecture to say that he had all of these deals going on, because we know nothing about those deals. There was never any information about whether it was one supplier, multiple suppliers, how he got a single one of the weapons. Focus on the, it's interesting that you put a lot of emphasis on the unlawfully. How could he lawfully ever obtain a firearm as a convicted felon? What would be that scenario? Well, Your Honor, the burden is on the government to prove that it was unlawful. Fair enough. Give me the fact pattern where it would be lawful for him to obtain a 9mm to sell to somebody. I'm not sure that there is one, Your Honor. Right. So why the emphasis on unlawfully? Because in every case where that has been in required that it actually be shown that it was unlawful. Well, isn't it shown by virtue of his status as a prior felon? Well, in this case, the unlawful element of the unlawful possession of the recipient doesn't have a bearing on the status of the defendant as a felon. It's the, so it depends which unlawful possession we are talking about. The transferee's unlawful possession, the felony status of Mr. Prieto has no bearing. When it comes to whether or not it was an unlawful seeking to obtain for Mr. Prieto, that's where it could come into play. And the problem is that... Right, and throughout the relevant period, he's a convicted felon. That's correct, Your Honor. But when it's unlawful possession, even because of a convicted felon status, courts require that that be proven. And here, there was no proof offered that there was any sort of violation of a statute over any law in his seeking to obtain because we have no information. What about 922G? He can't. There's no circumstance under which he can acquire a firearm. Attempted possession is not a part of 922G. So we don't know anything about the efforts he made, but he did not possess the weapon. So for it to be unlawfully sought to obtain, the guideline just doesn't include attempted possession as one of the potential firearms to be counted under this enhancement. As far as the parole status, the government stressed that there was no way of knowing. There was no way for the defendant to know that anything had changed between the beginning and 13 months later. And because he could have already been on parole for years already at that time. Thank you, Ms. White. Thank you, Ms. DeMarco. The case will be taken under revision. Thank you.